S92G0830. FINNEY v. DEPARTMENT OF CORRECTIONS.

(434 SE2d 45)

CARLEY, Justice.

Appellant in the instant appeal was successful in the pursuit of her claim under OCGA § 45-19-20 et seq., the Fair Employment Practices Act (FEPA). Although she incurred no attorney's fees, the special master nevertheless awarded her attorney's fees. On appeal to the superior court, the special master's award of attorney's fees was affirmed. The Court of Appeals granted appellee's application for a discretionary appeal and reversed. *Department of Corrections v. Finney*, 203 Ga. App. 445 (416 SE2d 805) (1992). This court granted appellant's petition for a writ of certiorari.

1. Nothing in OCGA § 45-19-38 expressly authorizes a special master to award reasonable attorney's fees to a successful claimant. Compare OCGA § 45-19-39 (c), which expressly authorizes the superior court, in its discretion, to award "reasonable attorney's fees and the costs of litigation" in connection with judicial review. However, OCGA § 45-19-38 does implicitly authorize a special master to award reasonable attorney's fees to a successful claimant. *Kilmark v. Bd. of Regents*, 175 Ga. App. 857, 870 (5) (334 SE2d 890) (1985). Appellant urges that a successful FEPA claimant who actually incurs no attorney's fees whatsoever in connection with the special master proceeding should nevertheless be entitled to recover attorney's fees because federal courts have construed similar federal statutes to authorize such a recovery.

It is undoubtedly true that, in construing FEPA, our courts may seek guidance from federal decisions construing similar federal statutes. *Department of Human Resources v. Montgomery*, 248 Ga. 465, 467 (2) (284 SE2d 263) (1981). However, it is equally true, and very significant, that FEPA does *not* track the language of any similar federal statute regarding the recovery of attorney's fees. Similar federal statutes *authorize without limitation* the recovery of "a reasonable attorney's fee." For example, 42 USC § 1988 provides:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, *a reasonable attorney's fee* as part

of the costs.

(Emphasis supplied.) Obviously, if there is statutory *authority* for the *unlimited* recovery of "a reasonable attorney's fee," the private fee arrangement as between the prevailing party and counsel is not determinative as to either the recovery of attorney's fees or the amount thereof. *Blanchard v. Bergeron*, 489 U. S. 87 (109 SC 939, 103 LE2d 67) (1989); *Blum v. Stenson*, 465 U. S. 886 (104 SC 1541, 79 LE2d 891) (1984). The prevailing party is statutorily entitled to "a reasonable attorney's fee" and

> [a]s we understand [42 USC] § 1988's provision for allowing a "reasonable attorney's fee," it contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less.

*Blanchard v. Bergeron*, supra at 93.

Our General Assembly *could* have authorized the unlimited recovery of "a reasonable attorney's fee" by a successful FEPA claimant. If it had, the decisions in *Blanchard* and *Blum* and other federal cases construing similar federal statutes could then be considered as persuasive authority. However, our General Assembly did *not* authorize the unlimited recovery of "a reasonable attorney's fee" by a successful FEPA claimant. To the contrary, it *limited* a successful FEPA claimant's recovery by providing that "[a]ny monetary award ordered pursuant to this *article* [, OCGA § 45-19-20 et seq.,] shall be for *actual damages only.*" (Emphasis supplied.) OCGA § 45-19-38 (d). Having the federal statutes as a model, the General Assembly's intent *not* to authorize a successful FEPA claimant's unlimited recovery of "a reasonable attorney's fee," but to *limit* a recovery of reasonable attorney's fees to successful claimants who are contractually obligated to pay counsel, could not have been clearer. An award of attorney's fees is payable to the successful claimant, not to the successful claimant's counsel. Counsel is relegated to a recovery pursuant to his or her contractual agreement with the successful claimant. Permitting a recovery of reasonable attorney's fees by the successful claimant who is *not* contractually obligated to pay counsel would permit a monetary recovery of *more* than the "actual damages" incurred and would be in contravention of the express language of OCGA § 45-19-38 (d).

There are *policy* considerations as to why an award of reasonable attorney's fees should be authorized for all successful claimants in FEPA cases, regardless of whether attorney's fees were actually incurred. The purpose of the judiciary is not, however, to determine what FEPA should provide. Our authority extends only to a construc-

tion of FEPA as it was enacted by the General Assembly. The primary rule of statutory construction is to ascertain the legislative intent. The legislative intent to *limit* a successful FEPA claimant to a recovery of such reasonable· attorney's fees as were *actually* incurred is clear. Pursuant to OCGA § 45-19-38, a special master is implicitly authorized to award reasonable attorney's fees to a successful FEPA claimant who actually incurred attorney's fees in pursuit of the claim. In no event, however, would the special master be authorized to award attorney's fees to a successful FEPA claimant who has incurred no attorney's fees whatsoever. "Any monetary award ordered pursuant to this article [, OCGA § 45-19-20 et seq.,] shall be for actual damages only." OCGA § 45-19-38 (d).

Accordingly, we hold that, when FEPA is properly construed, appellant in the instant case is not authorized to recover attorney's fees in connection with the special master proceeding because she incurred none and that no successful claimant in a FEPA case can recover attorney's fees when none were actually incurred unless and until the General Assembly amends that statute to authorize such a recovery. As the Court of Appeals correctly held, since appellant's

> rights under [FEPA] were maximized by the provision to her of counsel . . . at no charge to her, she was not entitled to the benefits extended under the other available alternative, i.e., an award of attorney['s] fees.

*Department of Corrections v. Finney,* supra at 446 (1).

> The policy arguments advanced in favor of a [recovery of a reasonable attorney's fee without regard to whether attorney's fees were actually incurred] should be addressed to [the General Assembly] rather than to this Court.

*Blum v. Stenson,* supra at 895-896 (II).

2. The superior court failed to award appellant attorney's fees in connection with the judicial review of the special master's award. In her cross-appeal in the Court of Appeals, appellant raised the issue of her entitlement, pursuant to OCGA § 45-19-39 (c), to recover attorney's fees in connection with the superior court's judicial review of the special master's award. However, the Court of Appeals failed to address this issue.

The issue of appellant's entitlement to a recovery under OCGA § 45-19-39 (c) is an entirely separate issue from her entitlement to a recovery of attorney's fees in the special master proceeding. That separate issue was properly raised in the Court of Appeals and should have been addressed. Accordingly, we remand this case to the Court of Appeals with direction to address the issues of whether appellant

may be eligible to recover attorney's fees pursuant to OCGA § 45-19-39 (c) and, if she is eligible, whether the superior court erred in failing to make such an award to appellant. When the Court of Appeals has ruled on this issue which was properly before it, the losing party shall be entitled to petition this court for a writ of certiorari.

*Judgment affirmed in part and case remanded in part with direction. All the Justices concur, except Clarke, C. J., and Hunt, P. J., who concur specially; Benham and Sears-Collins, JJ., who dissent.*

HUNT, Presiding Justice, concurring specially.

It would be possible, and logical, to construe the Fair Employment Practices Act, OCGA § 45-19-20 et seq. (FEPA), not to permit an award by a special master of attorney fees to a prevailing complainant (thus overruling the Court of Appeals decision of *Kilmark v. Bd. of Regents*, 175 Ga. App. 857, 870 (5) (334 SE2d 890) (1985)). This is because FEPA, while it tracks its federal counterpart (Title VII of the federal Civil Rights Act of 1964, 42 USC § 2000 et seq.) in many respects, does not contain a specific provision for an award of fees to a prevailing claimant. Compare 42 USC § 2000e5(k). Moreover, this state has traditionally followed the rule that attorney fees are not recoverable by a prevailing party except where *specifically* provided for by contract or statute. *Harrison v. Harrison*, 208 Ga. 70 (1) (65 SE2d 173) (1951).

Nevertheless, I agree with the majority's choice to follow *Kilmark*'s holding that OCGA § 45-19-38 *implicitly* authorizes a special master to award reasonable attorney fees to a successful complainant. I disagree, however, that the fact that Finney did not incur attorney fees is dispositive of her right to recover them. Rather, I would hold, as did the Court of Appeals, that the determinative factor for the opportunity of an award by a special master of attorney fees to a prevailing party is whether the party has obtained counsel appointed by the administrator of the Office of Fair Employment Practices (OFEP) pursuant to OCGA § 45-19-27 (3) or, whether the party has retained private counsel pursuant to OCGA § 45-19-37 (i).[1]

As pointed out by the Court of Appeals, FEPA establishes that a complainant may always have adequate representation in pursuing his or her claim before the special master, and may obtain the services of an attorney for that purpose in one of two ways: the complainant may utilize the services of the OFEP administrator, who,

---

[1] By the term privately retained attorney, I mean an attorney not appointed by the FEPA administrator pursuant to OCGA § 45-19-27 (3). Thus, privately retained attorneys would include those employed by a legal aid or legal services organization or others who undertake the work on a pro bono, or reduced fee, basis.

pursuant to OCGA § 45-19-27 (3), will arrange legal representation; or the complainant may retain his or her own private counsel, OCGA § 45-19-37 (i). Here, Finney chose the former alternative. Accordingly, her attorney was provided to her by OFEP and compensated under a contract executed by OFEP and the attorney. Having delegated to OFEP all arrangements for representation by a state agent in pursuing Finney's claim against another division of the state, Finney, although a beneficiary of that arrangement, should not now be able to claim fees thereunder. Finney did not, as she could have under OCGA § 45-19-37 (i), retain private counsel to represent her. Had she done so, in my view, and consistent with that of the Court of Appeals, she would have been able to pursue a claim for attorney fees before the special master.

It is not necessary, in this appeal, to reach the question of the extent of attorney fees which a special master may award a successful FEPA complainant who seeks fees for the services of a privately retained attorney, i.e., those fees actually incurred, or all reasonable fees. However, when that issue is presented, this court should examine, in light of the remedial nature of FEPA, whether there is any justification for distinguishing between an award of attorney fees to a successful claimant at the special master level and that to a successful claimant following judicial review in superior court pursuant to OCGA § 45-19-39 (c) (which specifically provides for an award, in the court's discretion, of *reasonable* attorney fees).[2]

I am authorized to state that Chief Justice Clarke joins in this special concurrence.

SEARS-COLLINS, Justice, dissenting.

It has been said that attorneys are the operators of the expensive toll bridges which everyone who seeks justice and critical changes through the law must cross. Unfortunately, too few people are able to afford the toll. Through the plurality opinion and the special concurrence, a majority of this Court today insures that even fewer Georgians who have lent their backbones to the building of this great state, and who in doing so have suffered the pain and frustration of employment discrimination, will have access to the attorneys needed to vindicate their rights. Today the majority insures that the number of

---

[2] Because the Court of Appeals has not yet ruled on the issue, I agree with the majority's remand to that court of the question whether the superior court erred in failing to grant attorney fees to Finney pursuant to OCGA § 45-19-39 (c) in connection with the Department of Corrections' appeal to the superior court of the special master's award. However, since Finney's attorney at the superior court level was not compensated under the contract with the OFEP administrator, see OCGA § 45-19-27 (3), unlike the proceedings before the special master, Finney would not be precluded from a fee award under the rationale of this special concurrence.

competent counsel standing ready to use our courts to eliminate discrimination from today's workplace will be significantly diminished. Today the majority's decision effectively denies many Georgians the key to the courthouse door and needlessly sows the seeds of future discontent. Today I feel much regret.

I, therefore, dissent.

1. In determining the interplay between the reasonable attorney fee provisions of OCGA § 45-19-38 (c) and the actual damages provision of § 45-19-38 (d), the plurality has completely ignored OCGA § 45-19-21. OCGA § 45-19-21 (a) (1) directs that the General Assembly enacted FEPA

> to provide for execution within public employment in the state of the policies embodied in Title VII of the federal Civil Rights Act of 1964 (78 Stat. 241), as amended by the Equal Employment Opportunity Act of 1972 (86 Stat. 103).

Thus, the General Assembly has directed that it enacted subsections (c) and (d) of § 45-19-38 to provide for the execution of the policies of Title VII. As § 45-19-38 (c) and (d) relate to the remedies available for unlawful discriminatory practices and to awards of reasonable attorney fees, let us examine the policies of the corresponding provisions of Title VII.

The legislative history of Title VII shows that the policy behind the remedies for an employers' unlawful discrimination itself was to make complainants whole by restoring them to the position in which they would have been were it not for the unlawful discrimination and not to punish the wrongdoer. See *Harrington v. Vandalia-Butler Bd. of Education*, 585 F2d 192 (6th Cir. 1978). Thus, when our General Assembly enacted FEPA, federal courts had held that punitive and compensatory damages were not available under Title VII. *Harrington*, supra.

Moreover, the "reasonable attorney fees" provision of Title VII was designed, not only as a remedy to restore a complainant to the position he or she would have been were it not for the unlawful discrimination, but for the wholly distinct purpose of facilitating the bringing of claims for such discrimination by awards of expenses of litigation. See *Johnson v. Ga. Highway Express*, 488 F2d 714, 716 (5th Cir. 1974). In this regard, federal courts have consistently held that the attorney fees provision of Title VII and similar civil rights statutes is not primarily to make the claimant whole but is to give complainants " 'effective access to the judicial process,' " *Blanchard v. Bergeron*, 489 U. S. 87, 95 (109 SC 939, 103 LE2d 67) (1989), and "to facilitate the bringing of discrimination complaints," *New York Gaslight Club v. Carey*, 447 U. S. 54, 63 (100 SC 2024, 64 LE2d 723)

(1980). Because of this policy, federal courts have rejected the proposition that attorney fee awards should be limited to the costs actually incurred by the claimant. *Blanchard,* supra, 489 U. S.; *Blum v. Stenson,* 465 U. S. 886, 892-895 (104 SC 1541, 79 LE2d 891) (1984). In *Blanchard,* supra, 489 U. S. at 90-97, the Court held that a client who had entered into a contingent fee contract with an attorney on a civil rights claim under 42 USC § 1983 should not be limited in a fee award to the amount represented by the contingent fee agreement, but instead was entitled to an amount representing reasonable attorney fees for services rendered in vindicating a plaintiff's civil rights.[3] Moreover, in *Blum,* the Court held that a client who was represented without a fee by a private non-profit legal organization was entitled to recover reasonable attorney fees. 465 U. S. at 892-895.

Subsection (d) of § 45-19-38 unquestionably tracks the policies of Title VII regarding the remedies for the unlawful discrimination itself — to limit those remedies to ones designed to make the complainant whole with regard to his or her employment and to prohibit remedies designed to punish the employer. Moreover, to construe § 45-19-38 (d) to limit attorney fees to those actually incurred unquestionably defeats the policies of the reasonable attorney fee provisions of § 45-19-38 (c). Limiting attorneys to recover only those fees actually paid would grant complainants either no access to the judicial process or less effective access than would a rule permitting complainants to recover reasonable attorney fees at prevailing market rates. The reason is clear — such a rule would diminish the number of counsel ready and able to represent claimants in FEPA cases. As demonstrated by the instant case, FEPA cases can be difficult and a claimant faces an adversary with vastly superior resources. It is thus reasonable to assume that if attorneys hired by the administrator are not permitted to seek reasonable fees at the prevailing rate for proceedings before the special master, the enforcement of FEPA will be diminished because the administrator will not be able to attract and obtain the services of skilled employment discrimination attorneys. This difficulty in attracting competent counsel will also be encountered by FEPA complainants who desire to choose their own attorney. Undoubtedly, many such complainants must rely on contingent-fee arrangements. However, as a complainant's monetary damages under FEPA will generally relate to back pay only, see § 45-19-38 (c) (1), many attorneys will refuse FEPA cases if they are precluded from seeking reasonable attorney fees at prevailing rates if their client

---

[3] The Court in *Blanchard* held, among other things, that the fee should not be what the client agreed to pay but what is reasonable under the circumstances of the case and that what the client agreed to pay is but one factor to consider in determining a reasonable fee. Id. at 92-97.

prevails.

With regard to contingent-fee agreements, there is additional adverse consequence of precluding an award of reasonable attorney fees at prevailing rates. If contingent-fee agreements served as an absolute limit to the amount of attorney fees, attorneys employed under such agreements might focus their energies on monetary damages to the detriment of important non-monetary remedies, § 45-19-38 (c) (1-7), that might benefit not only the claimant but society at large. See generally *Blanchard*, supra, 489 U. S. at 95-96. The ceiling on attorney fees imposed by the agreement would thus serve as a tempting incentive for lawyers to work the system, not make the system work.

Given the policy considerations outlined above, it is unreasonable to conclude, as does the plurality, that our General Assembly enacted a reasonable attorney fee provision under § 45-19-38 (c), with the stated purpose of effectuating the policy of Title VII, § 45-19-21 (a) (1), and then enacted § 45-19-38 (d) to defeat the very policy behind the grant of attorney fees. The only reasonable construction is that the General Assembly enacted § 45-19-38 (d) to effectuate the policy of Title VII of limiting the remedies for the unlawful discrimination itself to those designed to make the complainant whole with regard to the complainant's employment.

2. Furthermore, this construction is consistent with § 45-19-21 (a) (3) and (b). Those provisions, also ignored by the plurality, provide that

(a) The general purposes of this article are:
(3) To promote the elimination of discrimination against all individuals in public employment because of such individuals' race, color, religion, national origin, sex, handicap, or age . . . .
(b) This article shall be broadly construed to further the general purposes stated in this Code section and the special purposes of the particular provision involved.

For the reasons given in Div. 1 of this dissent, permitting attorneys to recover attorney fees at prevailing rates will promote the elimination of discrimination in public employment. The plurality's construction is completely inconsistent with the mandate to construe FEPA broadly to promote that purpose.

3. Moreover, I think the special concurrence also overlooks the clear direction given to this Court by the General Assembly to construe FEPA broadly to further the purposes thereof. First, although Finney chose to have her attorney appointed by the administrator, the attorney clearly represents Finney and not the administrator. OCGA § 45-19-27 (3). Moreover, there is simply nothing in §§ 45-19-

27 (3) or 45-19-37 (i) that states that a complainant who elects to be represented by an attorney appointed by the administrator may not thereafter seek attorney fees under § 45-19-38 (c). For these reasons and for those given in Divs. 1 and 2 of this dissent, I would construe FEPA to permit reasonable attorney fees for such complainants.

4. Finally, I have several comments on Div. 2 of the plurality opinion, which remands the case to the Court of Appeals for it to address whether the appellant is entitled to recover attorney fees under OCGA § 45-19-39 (c) for the proceedings in superior court. First, although the plurality concludes that OCGA § 45-19-38 (d) limits the special master's power to award attorney fees, that subsection should not be construed to limit the superior court's power to award attorney fees under § 45-19-39 (c). As § 45-19-38 (d) is part of a Code section that sets forth the authority of a special master and does not deal with the authority of a superior court, I would construe § 45-19-38 (d) to be limited to "monetary awards ordered [by a special master] pursuant to this article." Any other construction would be completely at odds with the mandate given the courts by § 45-19-21.

Moreover, construing § 45-19-38 (d) to limit the superior court's authority to award attorney fees would place a further burden on the administrator's ability to hire attorneys to represent complainants. Attorneys hired by the administrator are only paid by the administrator through the special master proceedings. OCGA § 45-19-27 (3). An attorney who succeeds before the administrator may have a client who cannot pay the hourly rate to have the attorney represent them on appeal to superior court. If the attorney may not seek market rates for his services on appeal to superior court, the attorney is faced with two prospects, either representing the complainant pro bono on the appeal, with no hope of being paid for that work, or abandoning defense of the appeal. These prospects for appellate work, combined with the fact that attorneys hired by the administrator may not seek market rates for the special master proceedings, would certainly discourage attorneys from agreeing to represent claimants through the administrator.

5. About 40 years ago the great poet Langston Hughes wrote: "What happens to a dream deferred? Does it dry up like a raisin in the sun . . . Or does it explode?" Today I wonder.

For the foregoing reasons, I dissent. I am authorized to state that Justice Benham joins in this dissent.

DECIDED JULY 15, 1993.

*Stroup & Coleman, Robert H. Stroup,* for appellant.
*Michael J. Bowers, Attorney General, Daryl A. Robinson,* Jef-

frey L. Milsteen, Senior Assistant Attorneys General, Terry L. Long, Assistant Attorney General, for appellee.

Amy M. Totenberg, Gary J. Leshaw, Elizabeth J. Appley, James M. Finley, Suzanne Wynn, Phillip Jackson, amici curiae.